Good morning, Your Honors. Good morning. Attorney Ramon E. Monsalve for Appellant Carlos Plaza. May it please the Court. Your Honor, in this case, the question before the Court is whether the evidence that the government presented at trial was sufficient to sustain the appellant's conviction for the second count of the indictment, which is the conspiracy to possess with intent to distribute. We basically argue in our case, Your Honor, a lack of knowledge in support of our contention that the evidence was insufficient. As the Court knows, the count number two is the 2007, February 2007 incident. The other one is the July 2007 incident. As to the February 2007 incident, the testimony, the evidence presented by the government was the testimony of the confidential informant who basically testified that he had received the narcotics from two other police officers not charged in the indictment in order to use that narcotics to basically create a case against one of the victims. I think it was Roberto Gonzalez. The confidential informant testified that he went over to the victim's house. He already had the two ounces of narcotics hidden in one of his boots. He went with the undercover agent. The undercover agent stated that, yes, it's you. He got off the car. When I say he is the confidential informant, he walked over to the victim's house. The victim was not there. He faked as if he had purchased the narcotics from the victim. That was also mentioned that it was pursuant to a plan that had already been devised by the Addis Ababa Drug Division. He came back with the narcotics relevant to our position in our case that the confidential informant indicated that he had not told any police officer about the fact that he had gotten those narcotics from those other two police officers, again, not charged in this indictment. My client, the appellant Carlos Plaza, was not in the area at the time that was part of the testimony. Now, the government mentions in support of the evidence, they also make reference to the fact that the testimony of an agent, a chart where the government showed to the jury that during the time that the incident took place and a little before and a little after, but in particular the date of the incident, there were an increase in the amount, frequency in the amount of call between the appellant Carlos Plaza and one of the police officers who had allegedly provided narcotics to the confidential informant. In order for the jury to make an inference that those calls were part of the conspiracy. No evidence was submitted to the court, presented to the jury, as to the content of those calls. That was with respect to the 2007 incident. I must mention that during the preparation of the pre-sentence investigation report, the probation officer concluded that the two ounces of cocaine involved in that particular incident was to be considered as part of the amount of narcotic for purpose of sentencing. We filed objections to that and the court concluded that the evidence as to Mr. Plaza's participation in that incident was so tenuous that that amount should not be included in determining the total amount of narcotics. Before you move away too far from the telephone calls, how was that evidence defended? How was it rebutted? What was the explanation given by the defense at trial? Anything? For the phone calls. The frequency of the phone calls. I know in the briefing it's their friends, their colleagues, but what about at trial? What was presented to the jury? What we presented to the jury, as far as I remember, was the fact that in cross-examination, we argued that the government limited the analysis of the call with respect to the police officer for a very few months. There was no comparison between the calls from Mr. Plaza to any other police officer, so it can show that with respect to that police officer, which was the one that allegedly provided narcotic, that the amount of calls were more and the frequency was much more. Those are the... Was any suggestion made to the jury that it would not be unusual for there to be an increase in telephone traffic between police officers when there's a legitimate operation going on? Frankly not. Okay. I had one other question that I wanted to ask you. Before you go, I don't know if this is what you were asking, but is there any evidence on the record as to the content? No. No? Absolutely not. Just a chart, an agent testifying as to the chart, reference to the frequency of the call with respect from this day to this day, but not at all, no content of the conversation. That's what we emphasized to the jury. May I ask you another question? The prosecution's evidence or the... Let me start over. The assertion in the government's brief about the remarkable coincidence that Officer Plaza directed the confidential informant to purchase, to attempt to purchase 50 baggies, that 50 happened to be the amount that the confidential informant was given by the other officer. How was that dealt with by the defense? You know, because that was the original plan. The original plan was to try to do a bust and buy transaction at the time of the arrest, but then when Norma Santos, the co-defendant, gave a statement, she explained that she received a call where she was told that the confidential informant had already received the narcotic from Mr. Aquino, the alleged victim. Yes, so my question goes to the coincidence that the number 50 was used and that just happened to be the number of baggies that were actually... Because that was what was instructed to the confidential informant pursuant to the plan to buy from Aquino, the 50... Where did Plaza get the number 50? As part of the plan. The plan was that the confidential informant was to buy the 50 baggies of cocaine from the victim, and it was 50 from the beginning. Okay, so that's with respect to the February 2007... Could you stay with that for a second, because I'm not sure I understood your answer. Do you have Eggie and Tutti talking about 50 with the confidential informant and Plaza just coincidentally also talking about 50? Well, not coincidentally, because Plaza talked to the confidential informant to buy 50 grams and because that was what Plaza, Santos, and the other police officers in the drug division had agreed to buy from Aquino as part of the buy and bust operation. Okay. And then in that particular transaction, the 2007 transaction, again, the evidence was they went to the... The confidential informant received the 50 bag of cocaine from Tutti and Eggie. He testified that he consumed, I think it was, three or five baggies. He refused to go to the victim's house because he was afraid that he might kill him. He learned that Aquino was going to be arrested. And then at the house, when Carlos Plaza arrived, right after they had Aquino placed under arrest, Plaza asked Officer Bernie Gonzalez, one of the government witnesses at trial, for the cocaine. Now, the government argued that Plaza was not supposed to know about the 50 grams of cocaine and that was one of the inference that I believe tainted the jury in concluding Mr. Plaza's knowledge as to the conspiracy. Because, again, the testimony by Officer Tovar, who testified as to Ms. Santos' statements, he testified, Tovar, that Santos indicated that she had received a call from the... Not the confidential, from the undercover agent, indicating that the confidential informant had already in his possession the 50 bag of cocaine. And so the inference, I believe, Your Honor, is defeated by the evidence at trial. And I understand that that's one of the reasons why we understand that the evidence was insufficient in this case. And, again, the government, with respect to the July 2007 incident, the government again brought the same agent and testified as to the amount of call during, before, during, and after the July 2007 incident, just to make the inference that the call was related to participation in the drug conspiracy. Thank you. Thank you. Mr. Anderson, good morning. Good morning, Your Honor. Assistant United States Attorney Scott Anderson on behalf of the government. May it please the court. The evidence in this case is more than sufficient to sustain the conviction of the defendant. Defense counsel is right. It is about knowledge, his client's knowledge, that there was a conspiracy to possess with intent to distribute controlled substances. As the government argued in its brief, the evidence presented was that Norma Santos Soto's statement was introduced where she says that the two officers, Egi and Tuti, who is Edgardo Hernandez Lopez and Jose Gonzalez Morales, they had a grudge against the victim, Juan Carlos Aquino Mendez. As part of this grudge, they are going to, Egi and Tuti want to frame the victim. So the morning, the government's cooperating defendant, Bernie Gonzalez, he's assigned the operation to arrest the victim in July based upon a falsified complaint that was filed in February before he joined the unit. And the reason why he was chosen was because he doesn't know what's going on. He's new to the unit. He doesn't know what happened in February. He doesn't know this plan to frame the victim. So he's assigned the arrest warrant. He has to go with a fellow officer who is also the co-defendant in this case, Jose Rodriguez Vasquez, because he knows where the victim lives. So that morning, the morning of July 5th, which is the day of the operation, the defendant, the appellant, calls the confidential informant, who is Gerald Hernandez, and says, buy 50 bags of cocaine from the victim on July 5th. It's going to be a buy-and-bust operation. How does that fact help you? It helps us because it shows that the exact amount of drugs that were provided by Egi and Tuti, who were not part of this operation, who are not even part of the Addis Ababa drug unit, provide that exact amount of drugs to the confidential informant in order to frame the victim. Here's how I read that piece of evidence, as you stated in your brief, and it's exactly as you have just stated it. The confidential informant testified under oath that this defendant told him to buy 50 baggies of cocaine that day from Aquino. Correct. Which he doesn't do. He's provided 50 bags of cocaine, the exact amount the defendant requests him to buy, from fellow officers. So when you take that evidence and you... Why would Plaza tell him to buy it from Aquino? Because they're setting up the confidential informant so that he could also believe that what he's doing is helping the police officers. It's when you look at that in conjunction with the amount of phone calls that the appellant has with those very same officers the day before, the day of, and the day after the incidents, that evidence together in its totality leads a jury to the reasonable inference that the defendant has knowledge, the appellant has knowledge of what's going on in this case, has knowledge that these police officers are conspiring to frame the victim, which is the count one, which is the civil rights count, by planting evidence. I may have the same problem Judge Howard is having. If the premise is that Plaza was in on the deal, then there's no way he would tell the C.I. to go buy it from Aquino because he would already know that the C.I. is getting it from Tutti and Eggie. It doesn't make any sense that he would tell the C.I. to go buy it if he already knew the C.I. was part of one of his deals was where he was getting it elsewhere. Well, I agree, Your Honor, but I can't argue the sense of the defendant. I don't know why I can't argue why the appellant would say that. But you have to. Your whole premise is predicated on assuming that given certain facts the person must have been acting for certain reasons, and yet this one salient central fact of one of the few conversations where we actually know what people said, he's speaking to someone you're saying is one of his co-conspirators, in effect, and yet he's saying something that is completely inconsistent with the knowledge of the way the conspiracy is being done. It suggests either he thinks he's being listened in on or he's not in the know. Or he's trying to insulate the confidential informant to make the confidential informant believe this is what he wants. Right. Boy, you're getting into lots of speculation here. Speaking about speculations, why are the telephone calls evidence of the conspiracy if we don't know what they were talking about? Well, the total record analysis is historical. We didn't have any wire. We didn't have any way to record the conversations. The entire case was historical. But you also had an operation going on, and it could just as easily have been conversations about the operation, not necessarily about committing a crime. Correct, except that the officers they're conversing with weren't part of the operation. So why would the appellant be in communication with two officers who were not part of the operation? There could have been a hundred reasons. Yeah. They have no idea what they were. But the government argued and the jury drew the reasonable inference that it is because he is conspiring with the officers who supplied the drugs to plant on the defendant. But you've just taken out of the hundred possible reasons they could have been talking. It could have been a party they're planning on going together. Who knows what. You want us to pick one and then say the jury could pick that one beyond a reasonable doubt? Yes, because it's not a coincidence that all the phone calls between the appellant and these two officers surround the two dates in question. We introduced the entire toll records for multiple months between February and September of 2007. And except for those two days of February 7th and July 5th, 2007, there are very few other phone calls between the appellant and the officers. Let's say Aggie and Tootie know that Plaza is doing this and they want it to go down and they're setting up the frame, so they talk to Plaza. But they don't tell him that they're supplying the drugs. They just want to make sure the arrest is going down and Plaza doesn't know where the drugs are coming from as evidenced by the fact that he tells the confidential informant to get them from Aquino. I keep coming back to that conversation, which seems so inconsistent with your theory, and then it's a theory that requires speculation. I don't think it's inconsistent. I understand what you're saying, but I don't think it's inconsistent when you look at the totality of everything. The conversations he's having with those officers who supply the drugs to the confidential informant, the fact that the appellant shows up at the location of the arrest and he immediately asks Bernie Gonzalez for the drugs, despite no one, just like Bernie Gonzalez and the officer Rodriguez-Vazquez, despite neither of them telling the appellant that they have the drugs. But the lead goes on that. They've told him they've made the arrest, right? Well, the appellant arrives at the scene right shortly after the arrest is made. Okay, so if I'm a police officer and I show up and other police officers have just arrested a guy on a drug bust, don't I assume they've got the drugs? They didn't leave them on the guy they arrested. They didn't leave them on the ground. Of course they have them. Except they are making the arrest based upon the February 2007 arrest warrant. That was the operational plan. So the fact that he shows up and says, where are the drugs, he doesn't know at that point whether a buy and bust actually succeeded that day. But he thinks it did because he told the CI to buy the drugs from Aquino. But he also knows, the government argued, that they were provided by the officers and they were not... But you argue that, but we've got no... Other than inferring from the conversation, from the fact of the phone calls, I don't see what you have. Well, because then, I mean, if he truly believed that the drugs came from Aquino, why was he, and he wouldn't be involved in the conversation later at the precinct, instructing Bernie Gonzalez to lie to the DA on how to submit the case? Well, no, clearly he's in on that conspiracy, and when he finds out they didn't get the drugs, they decide to lie and say he did get it, and he's been convicted of that. Correct. We're not revealing that, but you want to tie him into the other conspiracy, too. Because that conspiracy is the underlying conspiracy, which they're going to effectuate the civil rights conspiracy. So all the evidence ties together and shows that he conspired both to possess, with intent to distribute, and to frame the victim, based upon that possession of the 50 bags of cocaine. And although Norma Santos says in her statement that she was told by the confidential informant that the deal went down, the confidential informant denies that, that he ever told Santos, and she's in the car with the appellant. So the only person they're speaking to is the two officers who supplied the drugs to plant on the victim. Was Bernie in on the conspiracy? The first one? No, because he came to, well, Bernie came to the unit after the February incident. Well, but let me suggest this. He spoke with Plaza that day several times. Which, the day of July 5th? Yes. He was probably there during the discussion of the operational plan, whatever they were discussing to do to go and. And so if he spoke with Plaza and Plaza spoke with the others, can't we infer he was in on the conspiracy, too? Well, yes, he was charged and he played guilty to both conspiracies. Bernie? Yes. Because then he eventually went and submitted the case falsely to the DA and there was his. So the charge against him was misprison? No, that was against the other officer, Jose Rodriguez Vasquez, who was in the car with Bernie. Got it. On July 5th. But Bernie pleaded guilty to both conspiracies? Yes. And he testified for the government. Okay. Thank you, Your Honors.